CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 15 2006

JOHN F. CORCORAN, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANNY R. THOMPSON,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Civil Action No. 7:05-cv-00503 |
| LT. SIMPSON, et al.,<br>    Defendants. | )<br>)    By:    Michael F. Urbanski<br>)    United States Magistrate Judge<br>) |

## REPORT AND RECOMMENDATION

Plaintiff, Danny R. Thompson, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C § 1983, with jurisdiction vested under 28 U.S.C. §1343. Plaintiff alleges that while awaiting trial in the Pittsylvania County Jail ("Jail"), defendants failed to provide him with adequate medical care for an injury sustained during an altercation with another inmate.

This matter is now before the court on defendants Lt. Simpson, Sheriff Plaster, and Dr. Wang's motion for summary judgment.[1] Upon review of the record, the undersigned finds that Thompson has not presented any issue of material fact and that the defendants are entitled to judgment as a matter of law; and, thus, recommends that defendants' motion for summary judgment be granted. It is further recommended that Thompson's complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and such dismissal be considered a "strike" under 28 U.S.C. § 1915(g).

---

[1] The court notes that due to a clerical error, defendant Sgt. Brenda Lee was not served. However, as the court finds that plaintiff has failed to raise any dispute of material fact and that the defendants are entitled to judgment as a matter of law, the court finds that his claims against defendant Lee must likewise be dismissed.

# I

Thompson alleges that on June 26, 2004, while a pretrial detainee housed at the Jail, he was involved in an altercation with another inmate.[2] During the melee, Thompson sustained a severe bite on his right ear and claims that three quarters of the ear was severed. Thompson admits that he received immediate medical treatment at the Danville Regional Medical Center, but that on his release the emergency room physician recommended that he be taken to a "specialist" within 48 hours. Thompson claims that he was never taken to a specialist, but instead was forced to "dress" his own ear and was denied medication and bandages to properly treat the injury. Thompson further claims that on or about July 9, 2004, Dr. Wang, a physician at the Jail, removed the stitches from Thompson's ear and informed Thompson, a nurse, and another institutional physician that he had not had any cases similar to Thompson's 'severed ear' case and that he did not know what type of treatment would be necessary. Thompson then claims that Dr. Wang directed Sgt. Brenda Lee to make an appointment with a "specialist." However, Thompson claims the appointment was never made, and, instead, Dr. Wang and another institutional physician removed portions of the "rotten ear." Thereafter, Thompson admits that on or about August 2, 2004, he was examined and treated at the University of Virginia by a plastic surgeon, but claims he was returned to the Jail two days later and was subsequently denied any further medical treatment related to the injured ear and/or testing to determine if he had caught a communicable disease as a result of the bite. As a result of the allegedly inadequate treatment, plaintiff states he lost nearly three quarters of his ear and was forced to suffer significant physical pain and mental stress.

In support of their motion for summary judgement, defendants have attached Thompson's complete medical records detailing the medical treatment plaintiff received following the altercation on June 26, 2004. Those records reveal that immediately following the incident

---

[2] Although plaintiff contends this incident occurred at the Chatham County Jail, his institutional records establish that the fight and resultant injury occurred while he was housed in the Pittsylvania County Jail.

2

correctional officers retrieved the severed portion of Thompson's ear and transferred Thompson and the ear to an emergency medical center for reattachment and further treatment. Furthermore, those records establish that before Thompson was transferred to another institution on August 4, 2004, he was examined and treated by institutional medical staff on more than twenty-five separate occasions. On each of those occasions, he was examined by medical staff his injury was cleaned and dressed. Thompson also was provided with additional cleaning supplies, ointment, and bandages to independently clean and redress his injury between his scheduled medical exams. Thompson also was provided with numerous antibiotics and pain medication to treat his injury and was referred to an outside physician to determine what, if any, additional treatment was necessary.

Those records specifically detail the following: On June 26, 2004, plaintiff had a portion of his ear bitten off in an altercation with another inmate. Officers at the jail recovered the detached portion of the ear from a toilet, placed it on ice, administered first aid to the plaintiff, and immediately took him to Danville Regional Medical Center for emergency medical treatment. A physician at the center reattached the severed portion of the ear and prescribed plaintiff two medications for his injury, Augmentin, an antibiotic, and Lortab, a pain reliever. Further, the physician ordered Thompson to keep the area covered and to apply a triple-antibiotic ointment. Thompson was also advised to follow up with a physician within forty-eight hours. Thereafter, Thompson was returned to the Jail.

Dr. Wang examined Thompson on June 28, 2004, within 48 hours of the emergency room visit. Dr. Wang ordered that HIV and Hepatitis C tests be administered to the plaintiff, both of which yielded negative results. Additionally, Dr. Wang ordered that Thompson's ear be cleaned with hydrogen peroxide, dressed with an antibiotic ointment, and bandaged with sterile gauze. Plaintiff's ear was subsequently cleaned and dressed. The following day, Dr. Wang reevaluated Thompson's injury and determined that the injury did not require specialized treatment from an ear, nose, and throat doctor. Furthermore, Dr. Wang discontinued the

3

application of antibiotic ointment to the injury and directed that plaintiff be housed in medical segregation until his injury healed. The next day, July 1, 2004, institutional medical personnel cleaned plaintiff's ear with peroxide and redressed the wound. Additionally, Thompson was given supplies to dress his ear over the holiday.

On July 6, 2004, plaintiff was examined by medical staff, who noted that one area of his ear was bleeding, but found no infection. The following day, Thompson's ear was recleaned and dressed. At that time, Thompson complained that he had no feeling on the outside edge of his ear, and the nurse noted that Thompson's ear appeared worse. On July 8, 2004, medical staff cleansed and rebandaged plaintiff's ear and, again, the jail nurse noted again the ear looked worse and appeared at the anterior edge to be dark brown or black in color. However, she also noted that Thompson still had feeling in parts of the reattached ear lobe. On July 9, 2004, after examining Thompson's ear, Dr. Wang consulted with a plastic surgeon regarding continuing medical treatment for the injury.

On July 12, 2004, Dr. Wang ordered that the ear continued to be cleaned daily with water and peroxide, that an antibiotic ointment then be applied to ear, and then that the ear be rebandaged. The same day, Dr. Wang removed three sutures from the ear. On July 14, 2004, Dr. Wang directed the medical staff to continue checking plaintiff's injury daily and ordered an additional Hepatitis C test be taken, the results of which were again negative. Later that day, while cleaning and dressing Thompson's ear, medical staff noted the dark layer of skin around the injury was peeling away. Additionally, plaintiff was given bandages and ointment to independently dress his ear. The following day, July 15, 2004, plaintiff was examined by medical staff, who noted the ear was healing with irregular borders. Thompson was again provided with medical supplies to clean and dress his ear. At that time, plaintiff complained that the jail should pay for cosmetic surgery for his ear, but was advised by a nurse that the jail only pays for emergency treatment. On July 17, 2004, Dr. Wang, reexamined Thompson and noted that some tissue on the ear had become necrotic. He then removed the dead tissue, sterilized the

4

site, and redressed the wound. Again, on July 20, 2004, Dr. Wang examined Thompson and determined that additional necrotic tissue should be removed. Thompson was readvised about the risk of infection and was again told how to properly care for the ear as it continued to heal. Following that meeting, Dr. Wang also prescribed additional pain medications for Thompson's discomfort.

On July 21, 2004, Dr. Wang examined Thompson and cleaned and dressed his ear. Subsequently, Dr. Wang ordered bacterial culture tests to determine if the ear was infected, Motrin for plaintiff's pain, and again ordered the nursing staff to cleanse the site daily with hydrogen peroxide and redress the wound. Additionally, Dr. Wang ordered medical staff to schedule Thompson for an appointment with a plastic surgeon at the University of Virginia for possible reconstructive surgery; subsequently, an appointment was scheduled for August 2, 2004.

On July 22, 2004, plaintiff was again evaluated by medical staff. At that time he complained that he had not been examined since Monday, July 19, 2004, and had not received new medical supplies for his cleaning or dressing his ear. Plaintiff specifically denied being examined the previous day, July 21, 2004, and receiving antibiotic ointment and bandaging supplies from the medical staff. In any event, during this visit plaintiff's injury was once again treated, he was provided with ibuprofen, and was given additional supplies to dress his ear, including bandages and an antiseptic spray. Plaintiff also complained during that visit that he should not be charged for pain medication, but then stated that the charges were okay because he was going to "add it to [his] lawsuit for quarter of a million."

Dr. Wang examined Thompson again on July 23, 2004. Although Thompson's bacterial infection cultures were negative, Dr. Wang ordered the continuation of Thompson's ear treatment plan and pain medication. Plaintiff was examined by medical staff on July 26, 2004, who noted his ear was pink around edges, but did not have any apparent infection. At that time, plaintiff was given more medical supplies with which to clean and dress his ear. On July 28, 2004, Thompson was rechecked by institutional medical staff, his pain prescription was again

5

refilled, and Thompson was provided additional antibiotic ointment and supplies to dress his ear. And, once again, on July 30, 2004, Dr. Wang examined plaintiff, cleaned and dressed plaintiff's ear, and ordered additional medications.

On August 2, 2004, Thompson was taken to the University of Virginia's plastic surgery department. The attendant plastic surgeon recommended that Thompson continue to wash the ear with soap and water daily, apply an antibacterial ointment, and return in six months if he desired reconstructive surgery. Additionally, the plastic surgeon removed the remaining sutures from plaintiff's right ear. On August 2, 2004, Dr. Wang ordered an additional supply of antibiotic ointment for plaintiff. Thompson was examined for the final time at the Jail on August 4, 2004, at which time he was given a personal supply of antibiotic ointment and was advised to continue washing his ear with soap or mild shampoo and water once daily and to apply the antibiotic ointment. Thompson was also informed he would be a candidate for reconstructive surgery in six months; however, he was told the jail would not pay for the plastic surgery because the injury was a consequence of plaintiff's own actions. The same day, Thompson was transferred to the Danville City Jail.

## II

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court is obligated to view the facts and inferences drawn from those facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). A genuine issue of material fact exists if a reasonable fact

6

finder could return a verdict in favor of the nonmoving party based on the evidence submitted. Id. at 248.

Ordinarily, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings in order to withstand a motion for summary judgment. Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979). Thus, a pro se plaintiff's failure to file an opposing affidavit is not always necessary to withstand summary judgment. Id. In this instance, as Thompson has failed to file any response to the defendants' motion for summary judgment, the court finds that Thompson relies solely on the factual allegations made in his verified complaint. However, while the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. See, e.g., Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (finding that the court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions case in the form of factual allegations") (internal quotations and citations omitted); Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

Thompson alleges the defendants failed to provide him with adequate medical care following the 'ear biting' incident on June 26, 2004, thereby causing him to lose a portion of his earlobe. Because Thompson was a pretrial detainee at the time of the alleged incident, rather than a convicted inmate, Thompson's claim of denial of adequate medical care is properly considered under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 990 (1992). However, despite the variation of protections afforded under the Eighth and Fourteenth Amendments, the standard of care due is the same – "pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate [a] detainee's rights...when they are deliberately indifferent to serious medical needs." Id. at 991 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

7

To establish deliberate indifference, a plaintiff must present facts to evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting Cox v. District of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992)). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment generally does not state a cognizable constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Moreover, claims of medical judgment are not subject to judicial review, and mere malpractice or negligence in treatment does not amount to a claim of constitutional significance. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Estelle, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care, rather the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Thompson argues that defendants failed to provide him with adequate medical care to treat his injured ear, thereby resulting in the loss of a portion of his ear lobe. Defendants do not contest plaintiff's assertion that the bite to his ear was a serious medical condition which necessitated medical treatment; however, defendants argue that plaintiff's medical records show that they were not deliberately indifferent to that need. Thompson's admissions and his medical records establish that immediately following the altercation between Thompson and another inmate, he was immediately taken to an emergency treatment center to have his injury cleaned and the severed portion of his ear reattached. Additionally, Thompson was prescribed an antibiotic and pain reliever, which he admits he continued to receive once he returned to the jail. Those medical records further establish that following his return to the jail he received regular

8

medical care for the injury. In fact, Thompson was examined by medical personnel and his ear was cleaned, treated, and bandaged by institutional staff on more than twenty five separate occasions following the injury on June 26, 2004, and before his transfer to another institution on August 4, 2004. Also, during these visits Thompson was given gauze, antiseptic ointment, and bandaging materials so that he may personally clean and redress his wound between his visits to the institutional health center. Thompson's medical records also reveal that during this period medical staff performed at least two Hepatitis C tests, an HIV test, and bacterial cultures of the injured area, all of which came back negative, to determine a proper course of treatment. Accordingly, the court finds that Thompson has not presented a genuine issue of material fact as the record clearly establishes that Thompson received prompt and through medical care to treat his injury. Therefore, the undersigned recommends that defendants' motion for summary judgment be granted.

Furthermore, to the extent that Thompson alleges that Dr. Wang was incapable of offering sound medical treatment because he was not an ear specialist, this also fails to establish deliberate indifference. In <u>Bowring</u>, the Fourth Circuit explicitly disavowed second-guessing the propriety or adequacy of a physician's treatment and implicitly gave deference to the sound professional judgment of the physician providing medical care. <u>Bowring</u>, 551 U.S. at 48. As noted above, the record reveals that Dr. Wang provided plaintiff with regular and through medical care. Moreover, the court notes that Dr. Wang's treatment plan was nearly identical to the court of treatment recommended by the University of Virginia's plastic surgeon. Accordingly, the court finds that Thompson's claims against Dr. Wang amount to nothing more than a disagreement between an inmate and the prison physician as to the proper course of treatment and, thus, do not present a claim of constitutional magnitude.

Additionally, to the extent that Thompson believes that Dr. Wang failed to recognize or treat his medical needs, such disagreement does not rise to the level of a federal constitutional

9

violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, supra, at 105-106.

## III

Under 28 U.S.C. § 1915(e)(2)(B), the court may dismiss a complaint upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. §§ 1915(e)(2)(B)(I), (ii). A finding of frivolity can be made when the complaint lacks any basis in either fact or law. Denton v. Hernandez, 504 U.S. 25, 31 (1992). Thus, the court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts alleged are clearly baseless. Id.; see also Nasim v. Warden, Maryland House of Corrections, 64 F.3d 951, 955 (4th Cir. 1995). As described above, there is no factual basis for Thompson's claims against Dr. Wang; accordingly, the court finds these claims should be dismissed as frivolous. Thompson also alleges that defendants Sgt. Brenda Lee, Lt. T.C. Williams, and Sheriff G.H. Plaster denied plaintiff adequate medical care related to the treatment of his ear injury. However, as noted above, the court finds that Thompson did in fact receive prompt and through medical treatment for his ear injury. Therefore, the undersigned finds that Thompson has failed to state a claim of constitutional magnitude and recommends that these claims likewise be dismissed under § 1915(e).

## IV

As plaintiff has failed to present any issue of material fact, it is RECOMMENDED that the defendants' motion for summary judgment be granted. It is further RECOMMENDED that plaintiff's complaint be dismissed, as it fails to state a cause of action on which relief can be granted, and, therefore, be considered a "strike" pursuant to 28 U.S.C. § 1915(g).

The clerk is directed to immediately transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if they have any, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusions of law rendered herein by

the undesigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C § 636(b)(1) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by the reviewing court as a waiver of such objection.

Further, the Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

**ENTER:** This 15 day of March, 2006.

Michael F. Urbanski
United States Magistrate Judge